IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

WESTERN DIVISION


HUDSON SPECIALTY INSURANCE COMPANY                    PLAINTIFF


V.                                    CAUSE NO. 5:17-CV-137-DCB-MTP


TALEX ENTERPRISES, LLC,

JUBILEE PERFORMING ARTS CENTER, INC.,

TERRANCE L. ALEXANDER, and the

BOARD OF MAYOR AND SELECTMEN

OF MCCOMB, MISSISSIPPI, <u>et</u> <u>al</u>.                         DEFENDANTS


ORDER AND OPINION


Hudson Specialty Insurance Company ("Hudson") moves the Court to dismiss, in part, the amended counterclaim of Talex Enterprises, LLC, Terrance L. Alexander d/b/a Jubilee Performing Arts Center, and the Board of Mayor and Selectmen of McComb, Mississippi. For the reasons that follow, Hudson's motion is DENIED.

**Background**

This insurance-coverage dispute asks the Court to decide Hudson's duties to its insureds —— Talex Enterprises, LLC and Terrance Alexander —— under policies providing commercial general liability and commercial property coverage for a McComb, Mississippi building.

The building collapsed in July 2017, damaging public utilities and disrupting traffic.[1] One month after the collapse, the City sued the building's owner — Talex — in Pike County Chancery Court.

In its first state-court complaint, the City alleged that the building collapsed because too much water gathered on its roof. Doc. 1-4, ¶11. The City also alleged that Talex "had actual notice that an unsafe amount of water was accumulating on the roof of the building," yet "failed to warn adjoining property owners of a dangerous condition of which [Talex] was aware." Doc. 1-4, ¶¶11, 29.

The City amended its state-court complaint one month later. Doc. 1-5. The City's amended complaint, like its original, alleged that Talex and Alexander knew that too much water had gathered on the building's roof. Doc. 1-5, ¶9. They acquired that knowledge from two sources: first, from an unknown person[2] Alexander asked to clear the roof's drain, who told Alexander that the drain was clogged; second, from a contractor who refused to repair the roof on the ground that it "was so damaged that [the contractor] would not allow his employees to be exposed to such danger." Doc. 1-5, ¶¶15, 17.

---

[1] The City says the collapse cost it $389,320.29. Doc. 67-1.

[2] The City alleged that Alexander directed a student attending the JPAC school to clear the roof's drain. The student's name was not given.

The City sought leave to file a second amended state-court complaint, but the parties dispute whether the Court can consider it. The Court declines to review that complaint at this point but notes its separate concerns that (1) the City presented to the state court an "affidavit" containing statements made on information and belief, and (2) the City takes a position in this Court that shows that its mayor's representations to the state court were either blithely made or false.

After the City sued it, Talex requested a defense from, and initiated a property coverage claim with, Hudson under policies HBD10027329 and HBD10019191 (the "Policies").[3] Hudson denied coverage and sued, asking this Court to declare its coverage obligations and rescind the Policies.

The Policies contain commercial general liability (CGL) and property coverage forms. The CGL forms provide coverage for suits seeking damages caused by an "occurrence," which the Policies define as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." CGL Forms, pp.1 of 16 and 14 of 16. CGL coverage is excluded for property damage "expected or intended from the standpoint of the insured." CGL Forms, pp.2 of 16.

---

[3] When it is necessary to distinguish one policy from the other, the Court refers to HBD10027329 as the "Talex Policy" and HBD10019191 as the "Alexander Policy."

The property forms cover "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." Property Coverage Forms, p.1 of 16. But the forms are "void" if the insured commits fraud or "intentionally conceal[s] or misrepresent[s]" facts material to the policy. Property Coverage Forms, p.1 of 2.

Before it answered Hudson's amended complaint, the City executed a "Contract of Assignment of Chose in Action" with Talex and Alexander. Doc. 67-1. Through that assignment, Talex and Alexander purport to convey to the City their "right" to $389,320.39 that they say is "due" under the Policies' liability coverage forms. Doc. 67-1, ¶6. The City, Talex, and Alexander also agreed that the City (as assignee) could make a claim "solely under the commercial general liability coverage" of the Policies. Doc. 67-1, ¶6.

Armed with the assignment, the City, Talex, and Alexander counterclaimed against Hudson. Doc. 37. That counterclaim attempted to allege claims against Hudson for breaching the Policies and ill-defined fiduciary duties. Doc. 37, ¶¶f-y. But that counterclaim was unintelligible: It failed to identify which claims were being brought on behalf of which defendants under which

insurance policies. The Court therefore granted the City, Talex, and Alexander leave to amend. Doc. 70.[4]

Counterclaimants timely amended. Doc. 72. In the amended counterclaim, they allege that the Policies cover the building's "unexpected" collapse, and that "Hudson has failed and refused, and continues to fail and refuse, to meet its obligations under the policies." Doc. 72, ¶*l*. This "failure," Counterclaimants continue, is "a case of actual controversy within the jurisdiction of this Court." Doc. 72, ¶m. The only relief Counterclaimants seek is a declaratory judgment "affirm[ing]" the validity of the Policies and "find[ing] that the Policies were in full force and effect on the date of the insured loss." Doc. 72, p.11.[5]

Hudson moves to dismiss parts of the amended counterclaim, raising insurance-coverage issues that go beyond the pleadings and are better resolved on summary judgment. Doc. 74. Counterclaimants oppose, faulting Hudson for "delving into the merits" yet urging

---

[4] The Court also expressed concern about ethical issues that could arise if the City had not settled its state-court suit against Hudson's insureds. Doc. 70, p.3. The Court will treat Counterclaimants' failure to address that issue in the amended counterclaim as an affirmative representation that the state-court suit has settled.

[5] The amended counterclaim alleges that the building "unexpectedly collapsed" due to "[b]uilding decay that was hidden from view," Doc. 72, ¶¶f-g, while the City of McComb's state-court complaints repeatedly allege that the collapse was caused by Talex and Alexander's failure to address drainage issues that they knew about.

the Court to analyze coverage under the "true facts" exception.[6]

Doc. 85. Neither side explores the Declaratory Judgment Act.[7]

I

To overcome Hudson's motion, Counterclaimants must plead a plausible claim for relief. <u>Romero v. City of Grapevine, Tex.</u>, 888 F.3d 170, 176 (5th Cir. 2018) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). A claim is plausible if it contains factual content that allows the Court to reasonably infer that Hudson is liable for the misconduct alleged. <u>Edionwe v. Bailey</u>, 860 F.3d 287, 291 (5th Cir. 2017) (citing <u>Iqbal</u>, 556 U.S. at 678).

The Court accepts well-pleaded facts as true and views them in the light most favorable to Counterclaimants. <u>In re ATP Oil & Gas Corp.</u>, 888 F.3d 122, 125-26 (5th Cir. 2018). But the Court discredits "conclusory allegations, unwarranted factual inferences, or legal conclusions." <u>Singh v. RadioShack Corp.</u>, 882 F.3d 137, 144 (5th Cir. 2018) (internal citation and quotation marks omitted). The Court, for example, discredits the amended counterclaim's conclusory allegation that "Hudson has failed and

---

[6] Counterclaimants say that the City's state-court complaints triggered a duty to defend. The Court is unpersuaded. In the Court's tentative view, the "true facts" exception is the only way that Hudson's duty to defend arose.

[7] Although the amended counterclaim requests a Federal Rule of Civil Procedure 57 speedy hearing, it supports that request with vague reasons that could apply to any case. Doc. 72, ¶p.

refused, and continues to fail and refuse, to meet its obligations under its policies." Doc. 72, ¶*1*.

In ruling on Hudson's motion, the Court relies on the amended counterclaim, its attachments, and documents incorporated into it by reference. Wolcott v. Sebelius, 635 F.3d 757, 763 (5th Cir. 2011).

II

The Declaratory Judgment Act (the "Act") empowers the Court to declare the rights of any interested party in a case of actual controversy within its jurisdiction. 28 U.S.C. § 2201(a). Under the Act, declaratory relief is not granted as of right; it is left to the Court's discretion. Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1996); Torch, Inc. v. LeBlanc, 947 F.2d 193, 194 (5th Cir. 1991).

To plead a claim under the Act, a plaintiff must allege a substantial controversy between parties of adverse legal interests that is "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genetech, Inc., 549 U.S. 118, 127 (2007) (citation omitted). Counterclaimants have so alleged here.

The amended counterclaim alleges facts showing an actual, present dispute between Hudson and Counterclaimants over CGL and commercial property coverage under the Policies. See Misczak v.

7

Chase Home Finance, L.L.C., 444 F. App'x 35, 36 (5th Cir. 2011) (per curiam). Nothing more is required at this Rule 12 stage.

Accordingly,

IT IS ORDERED that Hudson Specialty Insurance Company's motion **[Doc. 74]** to dismiss the amended counterclaim of Talex Enterprises, LLC, Terrance L. Alexander d/b/a Jubilee Performing Arts Center, and the Board of Mayor and Selectmen of McComb, Mississippi is DENIED.

FURTHER ORDERED that if Counterclaimants desire a speedy hearing under Federal Rule of Civil Procedure 57, Counterclaimants shall file a motion requesting a speedy hearing and a supporting brief explaining why the Court should prioritize this case over others on its docket.

SO ORDERED, this the 25th day of June, 2018.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE