IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
Western Division

**HUDSON SPECIALTY INSURANCE COMPANY**                  **PLAINTIFF/**

                                                                         **COUNTER-DEFENDANT**

**V.**                                          **CIV NO: 5:17-cv-00137-DCB-MTP**

**TALEX ENTERPRISES, LLC; JUBILEE PERFORMING
ARTS CENTER, INC.; TERRANCE L. ALEXANDER; and the
BOARD OF MAYOR AND SELECTMEN
OF MCCOMB, MISSISSIPPI, et al.**                        **DEFENDANTS/**

                                                                            **COUNTER-CLAIMANTS**

## ORDER

THIS MATTER is before the Court on Plaintiff/Counter-Defendant Hudson Specialty Insurance Company ("Hudson")'s Motion to Strike Expert Causation Opinions (Doc. 204), and Defendants/Counter-Claimants Talex Enterprises, LLC ("Talex"); Terrance L. Alexander ("Alexander"); Jubilee Performing Arts Center, Inc. ("Jubilee"); and, the Board of Mayor and Selectmen of McComb, Mississippi ("McComb")'s Response in Opposition to Motion to Strike Expert Causation Opinions (Doc. 216). The Court having examined the motions, memoranda in support, and the applicable statutory and case law, and being fully advised in the premises, finds that the Motion to Strike Expert Causation Opinions should be DENIED.

**BACKGROUND**

This is a case arising out of an insurance dispute between Hudson Specialty Insurance Company and Talex Enterprises, LLC, Jubilee Performing Arts Center, Terrance L. Alexander and the City of McComb. The dispute arises out of an incident involving a property insured by Hudson, the JPAC Building, located at 230-232 Main Street, McComb, Mississippi. The JPAC Building is listed under two policies of insurance issued by Hudson. Talex owns the JPAC Building and, at the time of the incident, Jubilee operated a performing arts school out of the building. Alexander is the principal for both Talex and Jubilee.

Talex is the named insured under one policy, No. HBD10027329, (the "Talex Policy"), which provides building property coverage and commercial general liability coverage. Alexander d/b/a Jubilee is the named insured under the other policy, No. HBD10019191, (the "Alexander Policy"), which provides personal property coverage and commercial general liability coverage.

The JPAC Building collapsed on July 23, 2017. After the collapse, the remaining portions of the JPAC Building required immediate stabilization to render them safe. McComb declared an emergency condition and hired Mr. Laird, an engineer with Laird & Smithers, Inc., to "prevent further injury and property

destruction." McComb designated Mr. Laird as a non-retained expert for this trial. Mr. Laird's report claimed that the collapse was caused by the fact that the JPAC Building "had been reroofed many times without removal of the degraded underlying roofing materials; thus adding additional weight to the roof structure." (Doc 204-6, Laird Report p. 2).

McComb also designated Steve Cox as a non-retained expert. Mr. Cox is a local architect who owned property neighboring the JPAC Building. In the initial disclosure, Mr. Cox opined that the building collapsed because of the condition of very old mortar and not because of water standing on the building roof or because of roof repair.

**ANALYSIS**

Hudson puts forth two reasons to strike the opinions of Defendants/Counter-Claimants' experts: (1) the opinions challenge or are inconsistent with the 'admitted' facts regarding the partial collapse of the JPAC building, and (2) Defendants/Counter-Claimants acted in bad faith in designating its experts. The Court will address each in turn.

I. **Admitted Facts**

At issue is the Contract of Assignment of Chose in Action (Doc. 67-1) ("The Contract" or "The Assignment"). In The

Assignment Defendants/Counter-Claimants agreed and contracted that attorney Wayne Dowdy would undertake joint representation of Alexander; Jubilee; Talex; and McComb in the pending Federal Court Action filed by Hudson. The Assignment also stated that the claims of McComb would be made solely under the commercial general liability coverage of the insurance policies issued by Hudson. In this contract, the parties agreed that a large amount of rainwater had collected on the JPAC roof and the weight of the rainfall was the proximate cause of the collapse. <u>See</u> (Doc. 67-1 Ex. A). Hudson claims that the statement in The Assignment qualifies as a judicial admission, removing the question of causation from contention.

A judicial admission is binding upon the party making it. To qualify as a judicial admission a statement must be (1) made in a judicial proceeding; (2) contrary to a fact essential to the theory of recovery; (3) deliberate, clear, and unequivocal; (4) such that giving it conclusive effect meets with public policy; and (5) about a fact on which a judgment for the opposing party can be based. <u>See</u> <u>Heritage Bank v. Redcom Labs., Inc.</u>, 250 F.3d 319, 329 (5th Cir. 2001). The effect of a judicial admission is to withdraw a fact from contention. <u>See</u> <u>Martinez v. Bally's Louisiana, Inc.</u>, 244 F.3d 474, 476 (5th Cir. 2001).

Examples of judicial admissions are "admissions in the pleadings in the case, in motions for summary judgment, admissions in open court, stipulations of fact, and admissions pursuant to requests to admit." See 6 Handbook of Fed. Evid. §801:26 (8th ed.). A judicial admission is a "formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them." See Martinez, 244 F.3d at 476-477. A judicial admission should not be confused with an evidentiary admission, which may be "controverted or explained by the party." See id.

The first requirement of a judicial admission is that it be made in a judicial proceeding. The Defendants/Counter-Claimants' statement in The Assignment does not form any part of the pleadings in this proceeding. The contract at issue was not made in a pleading, stipulation, deposition, testimony, response to request for admissions, or in counsel's statements to the court. As such, the terms of the contract are not judicial admissions, but are evidentiary admissions that can be controverted or explained by the parties.

In addition to not having been made during a judicial proceeding, The Assignment also fails to be a "deliberate, clear, and unequivocal" admission. The Assignment contains an agreement that the proximate cause of the collapse was a

5

collection of rainwater, but there is nothing to indicate the Defendants/Counter-Claimants were foreclosing the possibility of any other explanation for the collapse. The Assignment was entered into on December 22, 2017, a little more than a month after the lawsuit was filed and significantly before the Case Management Order required the designation of experts. It is not "deliberate, clear, and unequivocal" that the Defendants/Counter-Claimants intended this Assignment to be a judicial admission regarding causation — a highly contested issue — especially at that stage of the litigation.

Requiring the Defendants/Counter-Claimants to be beholden to The Assignment as a judicial admission is counter to public policy. When a party amends a pleading, any statements in the earlier proceeding that were judicial admissions become evidentiary admissions if the pleadings are contradictory, i.e., an amended pleading supersedes the original pleading. See 188 LLC v. Trinity Industries, Inc., 300 F.3d 730, 736 (7th Cir. 2002). The party opponent may offer the earlier version of the pleadings as evidence, but the statement can no longer be considered a judicial admission. See id.

The reasons that support converting judicial admissions into evidentiary admissions upon amending a complaint also apply when considering The Assignment. It goes against public policy

6

to bind a party to its original perception of the case before the party goes through discovery. Therefore, courts approach this issue with flexibility so that judicial admissions made in pleadings can be overridden by merely amending the pleading. As such, this court will approach The Assignment with the same flexibility. Therefore, the statement regarding causation in The Assignment is not a judicial admission that takes the issue of causation out of contention, but is an evidentiary admission that can be controverted or explained.

**Daubert Standard**

As the Assignment is not a judicial admission, the Court must evaluate the expert opinions on their own merit. Hudson asserts that neither Cox nor Laird's expert causation opinions can withstand Daubert scrutiny from either a relevance or reliability standpoint. See e.g., Daubert v. Merrell Dow Pharmaceuticals, Inc., 113 S.Ct. 2786 (1993).

Hudson argues that there is no "obvious relevance to expert causation presentations, much less presentations which contradict such foundational allegations and binding judicial admissions." As this court has found no binding judicial admission regarding expert causation, this argument fails. The expert causation opinions are relevant to the issues at hand. The standard for relevancy is generally a "low bar," under

Daubert. See Camowraps, LLC v. Quantum Digital Ventures LLC, No. 13-6808, 2015 WL 403187, *3 (E.D. La. Jan. 28, 2015). Here, the causation of the collapse is relevant because the Subject Policies trigger coverage if loss is caused by "building decay hidden from view and the use of defective materials or methods in construction or renovation." Both expert opinions promulgate building decay as a potential cause of loss, making the declaration that coverage was triggered more probable than not.

In its Reply, Hudson next argues that the opinions cannot be relevant because the expert opinions do not put forth a "Covered Cause of Loss." To support this argument, Hudson looks to the Subject Policies which require that there be "_defective_ renovation materials or methods" and that "_hidden_ decay caused or contributed to the collapse." (Doc. 226 at p. 7)(citing 2017 Alexander Policy [Doc. 13-2], at p. 73; Talex Policy [Doc. 13-3], at p. 72(emphasis added)). Hudson argues that Laird testified that the weight of built up roofing materials was the cause of the collapse, but that he _did not_ testify that the past re-roofing was "defective." Hudson claims that "Neither Mr. Cox nor Mr. Laird testified that the mortar decay which allegedly caused the JPAC building's collapse was not plainly visible." (Doc. 226 at p. 5). As such, the testimony cannot be relevant because the building decay must be "hidden from view" to trigger the Subject Policies.

This court does not agree with Hudson's claim that this makes the testimony irrelevant so as to require striking expert testimony. The Daubert analysis should be restrained to the process of reaching the expert's conclusions, not the merits of the conclusions themselves. The merits should be addressed through "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." See Bailey v. Stanley Access Technologies, Inc., No. 3:14-cv-72-SA-JMV, 2015 WL 6828921, *2 (N.D. Miss. Nov. 6, 2015)(quoting Daubert, 509 U.S. at 596). Here, the determination on whether the Policies are triggered will be based of the merits of the conclusions and should be addressed through cross-examination. The Court's role as gatekeeper should not supplant a trial on the merits. See Pipitone v. Biomatric, Inc., 288 F.3d 239, 250 (5th Cir. 2002)(quoting Daubert 509 U.S. at 596).

Hudson next argues that the opinions are unreliable because they fail to exclude the weight of rainwater collection as a "causative factor in the roof collapse." It is a well settled principle of law that there can be more than one proximate causative factor. The rainwater, the mortar deterioration, and the roofing material accumulation could all have contributed to the collapse of the roof.

However, even if there is a single proximate cause of the collapse, there is no requirement that an expert eliminate every alternative cause. See Arlington Southern Hills, LLC v. American Ins. Co., 51 F.Supp.3d 681, 690 (N.D. Tex. 2014)("While failing to eliminate other possible causes may diminish the strength of an expert's opinion, the admissibility of that opinion is not affected.") As the court in Walker v. WTM, Inc. noted, failing to "exclude all other possible causes of the accident," is usually a "matter for cross-examination, not exclusion." No. 2:09-cv-65-KS-MTP, 2010 WL 4259784, *5 (S.D. Miss. Sept. 30, 2010).

It should be noted that Hudson does not raise any concerns regarding the procedure or methodology used or the qualifications of either expert.

**II. Bad Faith**

Hudson next alleges that the Defendants/Counter-Claimants abused the expert discovery process. On September 25, 2018, the Court entered a Case Management Order [106], setting Plaintiffs' expert designation deadline as February 1, 2019, and Defendants' expert designation deadline as March 1, 2019. On February 6, 2019, the Court granted the parties' joint Motion for Extension of Time to Designate Experts [136], extending Plaintiffs' expert designation deadline to February 22, 2019, and extending

Defendants' expert designation deadline to March 22, 2019. See Order [140]. The Court then granted the Defendants' unopposed Motion for Extension of Time to Designate Experts [144], extending the time another ten (10) days. On March 28, 2019, the Court conducted a conference with the parties to discuss expert designations, remaining discovery, and extensions. The Court directed the parties to submit a proposed schedule and discovery completion plan, after which, the Court set the Defendants' expert designation deadline as April 19, 2019. See Order [176]. On April 19, 2019, Defendants filed another Motion for Extension, requesting an additional seven (7) days. (Doc. 177). Plaintiffs opposed the Motion and filed its Response. (Doc. 181). This Court granted the Motion and extended another seven (7) days, making expert designations due on April 26, 2019. (Doc. 184).

Defendants/Counter-Claimants designated Mr. Laird as a non-retained witness on March 4, 2019. (Doc. 150-1 at p. 6). The Defendants/Counter-Claimants hired Mr. Laird to provide expert testimony on February 1, 2019 and, at that time, were aware of Laird's opinion that the weight of roofing materials was the proximate cause of the collapse. Despite this, Defendants/Counter-claimants wrote in their Expert Designation [150-1] that "Defendants believe that Mr. Laird is consistent with the opinion expressed during his deposition by Steve Cox…

11

It is believed that Mr. Laird will also state that the building collapsed because of the condition of the very old mortar, not because of water standing on the building roof."

This, of course, is not all that Laird testified to in his deposition. Instead, he alleged that he told Defendants/Counter-Claimants' attorney around November 2018 that he believed the possible cause of the roof collapse was "[t]he weight of the roof and the condition of the exterior load-bearing walls… the multiple layers of roofing that added weight." See Laird Depo. [ECF 204-1], at pp. 54-55. Defendants/Counter-Claimants failed to disclose this information during their expert designation. As previously described, Defendants/Counter-Claimants limited Laird's proposed testimony to mortar issues, not issues with the roofing materials.

This Order will address Hudson's two issues: (1) the designation of Mr. Laird as a non-retained expert, and (2) the failure to disclose Mr. Laird's opinion by the initial disclosure.

**Mr. Laird as a Nonretained Expert**

The Federal Rules of Civil Procedure set forth different requirements for experts who are designated as "retained," versus experts designated as "non-retained." A retained expert is subject to the requirements of FED. R. CIV. P. 26(a)(2)(B),

which requires a comprehensive report that includes: (1) a complete statement of all opinions the witness will express and the basis and reasons for them, (2) the facts and data considered, (3) exhibits to be used, (4) qualifications, including publications, (5) cases in which the expert has testified, and (6) a statement of compensation to be paid for the study and testimony. A non-retained expert is not required to submit the report of a retained expert, but he is required to present a disclosure of "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705 and a summary of those facts which the witness is expected to testify." FED. R. CIV. PRO. 26(a)(2)(C).

The Court should use common sense when evaluating the designation of an expert as retained or non-retained. See Cooper v. Meritor, Inc., No. 4:16-cv-52-DMB-JMV, 2018 WL 1513006, *2 (N.D. Miss. March, 27 2018). A retained expert witness is an expert who, without prior knowledge of the facts giving rise to litigation, "is recruited to provide expert opinion testimony." Id. A witness is "specially employed" under Rule 26(a)(2)(B) when "he has no personal involvement in facts giving rise to the litigation, but is engaged to provide opinion testimony, regardless of whether he is compensated or simply volunteers." See Cooper v. Meritor, Inc., No. 4:16-cv-52-DMB-JMV, 2018 WL

13

1513006, *2 (N.D. Miss. March, 27 2018)(quoting Tolan v. Cotton, No. H-09-1324, 2015 WL 5332171, *1 (S.D. Tex. Sept. 14, 2015).

On the other hand, a non-retained expert witness' testimony, "arises not from his enlistment as an expert, but, rather, from his ground-level involvement in the events giving rise to the litigation." Id. If the expert is "part of the ongoing sequence of events and arrives at his causation opinion during treatment, his opinion testimony is not that of a retained or specially employed expert." Id.

Mr. Laird is a non-retained expert, despite Hudson's claims that he should have been designated as retained. Mr. Laird had an initial conference call with City officials on July 23, 2017, the day of the collapse (Laird Depo. p. 13). He then drove to McComb the next day to meet with the individuals from the conference call (Laird Depo p. 14). That Monday Mr. Laird, through Laird & Smithers, Inc., was retained to "get the building in a safe, stable condition so that they could reopen Broad Street…" (Laird Depo. p. 14). At that time, Mr. Laird was not hired to perform a "cause and origin analysis" or "come to an opinion as to the cause and origin of the roof collapse." However, as Mr. Laird described, there is overlap between what he was hired to do, and the steps taken to provide a cause and origin analysis. (Laird Depo. p. 16).

Mr. Laird has "ground-level involvement" with the JPAC collapse. He and his firm were hired to stabilize the building and get it in a safe condition. Through his involvement with the JPAC collapse, Mr. Laird evaluated the causation of the collapse. The mere fact that he was then retained to provide his expert testimony does not make him a "specially employed expert" who is solely retained to provide testimony at trial and is not involved in other ways with the case. Mr. Laird is testifying as to the opinion he formed during his employment with the City of McComb as he worked to stabilize the JPAC building. Therefore, McComb correctly designated Mr. Laird when they described him as a non-retained expert.

**Failure to Accurately Disclose Mr. Laird's Opinion**

Defendants/Counter-Claimants argue that Hudson has waived its complaint about the "failure to properly disclose expert opinions." Hudson opposed Defendants/Counter-Claimants request for a seven-day extension of Defendants expert designation deadline to serve Mr. Laird's expert report. Hudson argued that the Motion was an attempt to cure the failure to properly and fully designate Mr. Laird. Magistrate Judge Parker overruled Hudson's opposition and granted Defendants/Counter-Claimants' requested extension. In his ruling, Magistrate Judge Parker wrote that Hudson "cites no authority which restricts a party

15

from supplementing its expert designation before the expiration of the designation deadline. The expert designation deadlines set by the Court establish the dates on which final reports must be produced by the parties. Order [Doc. 184] at p. 4. Hudson did not object to this ruling within the 14 days required by Federal Rule of Civil Procedure 72(a).

Hudson argues that it has not waived its right to seek relief regarding these issues. It proffers that Judge Parker's Order "merely granted Counter-Plaintiffs time to produce a report to supplement designated opinions — not to present a new, previously undisclosed opinion." In addition, Hudson did not learn until Laird's May deposition that Laird had provided his opinion regarding roofing materials to Defendants/Counter-Claimants in November, 2018, well before the initial designation of experts on March 24, 2019. The court agrees with Hudson that it did not waive its right to address the issue of the Defendants/Counter-Claimants improperly disclosing the opinion of Mr. Laird.

Parties must serve expert disclosures containing "a complete statement of all opinions the witness will express and the basis and reasons for them…" See FED. R. CIV. P. 26(a)(2). Parties must supplement their disclosures if they learn that a prior response was incomplete or incorrect and that information

16

was not known to the other parties during the discovery process. See Fed. R. Civ. P. 26(e)(1). However, Rule 26(e) only applies to supplementation and not entirely new expert opinions. See Bailey, 2015 WL 6828921 at *2 (emphasis added).

Rule 26(a)(2) is meant to provide notice to opposing counsel before the deposition as to the testimony of experts. See id. Issues that were not included in the initial report cannot be considered supplementary. See id. A party who fails to comply with Rule 26 "bears the burden to show that its actions were substantially justified or harmless." Id. at *3. Therefore, as Defendants/Counter-Claimants failed to comply with Rule 26 by failing to disclose a known opinion of their expert at the initial designation, the burden shifts to them to show their actions were justified or harmless.

Defendants/Counter-Claimants argue that any failure to timely disclose Mr. Laird's causations opinion was harmless. To support this proposition they assert: (1) Hudson has neither designated an expert, nor requested an extension to do so, (2) a non-timely disclosure, therefore, would not impair the ability of Hudson's expert to offer counter-testimony, and (3) Hudson fully examined Mr. Laird's expert opinions at deposition "subsequent to the service of his report, but prior to the expiration of the discovery deadline." (Doc. 217 at p. 14).

Hudson counters that the abuse of expert discovery procedures resulted in "avoidable waste of attorney and judicial resources to compel an accurate disclosure of Mr. Laird's opinions and a report which should have been provided with his initial designation." This Court finds that the untimely disclosure was harmless as Hudson was able to fully depose Mr. Laird and Hudson had no expert witness of its own with whom it had to provide Mr. Laird's report.

To exclude evidence as a sanction under Rule 37(c)(1), the court must consider four factors: (1) the explanation for the failure to identify the witness, (2) the importance of the testimony, (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice. See Bailey, 2015 WL 6828921 at *3. The Plaintiffs have not explained why they did not accurately describe Mr. Laird's expert opinion in the initial designation. The testimony is important as it relates to the causation of the collapsed building, an issue relevant to triggering the Subject Policies. As previously stated, Hudson was not prejudiced by the untimely disclosure of Defendants/Counter-claimants. Also, there is no need for a continuance because the Plaintiffs supplemented their disclosure prior to the expiration of the discovery deadline. As a result, Plaintiff/Counter-Defendant's Motion to Strike Expert Testimony is denied.

## CONCLUSION

This Court, after considering the relevant Motions, has determined that The Assignment between McComb, Talex, Alexander, and Jubilee does not constitute a Judicial Admission. Therefore, the Expert Opinions put forth by McComb must be evaluated under the Daubert standard. As such, this Court finds that the expert opinions satisfy the Daubert standard and are both relevant and reliable.

In addition, the Court finds that, although the Defendants/Counter-Claimants failed to properly disclose Mr. Laird's expert opinion in the initial designation, the error was harmless. Therefore, the Plaintiff/Counter-Defendant's Motion to Strike Expert Causation Opinions is hereby DENIED.

IT IS THEREFORE ORDERED AND ADUDGED that the Motion to Strike Expert Causation Opinions is DENIED.

SO ORDERED AND ADJUDGED this the 4th day of September 2019.

___/s/ David Bramlette_____
United States District Court Judge