IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

Western Division


HUDSON SPECIALTY INSURANCE COMPANY                    PLAINTIFF/

                                                      COUNTER-DEFENDANT


V.                                    CIV NO: 5:17-cv-00137-DCB-MTP


TALEX ENTERPRISES, LLC; JUBILEE PERFORMING

ARTS CENTER, INC.; TERRANCE L. ALEXANDER; and the

BOARD OF MAYOR AND SELECTMEN                          DEFENDANTS/

OF MCCOMB, MISSISSIPPI, et al.               COUNTER-CLAIMANTS

ORDER

THIS MATTER is before the Court on Plaintiff/Counter-
Defendant Hudson Specialty Insurance Company ("Hudson")'s Motion
for Partial Summary Judgment-Liability Coverage (Doc. 202), and
Defendants/Counter-Claimants Talex Enterprises, LLC ("Talex");
Terrance L. Alexander ("Alexander"); Jubilee Performing Arts
Center, Inc. ("Jubilee"); and, the Board of Mayor and Selectmen
of McComb, Mississippi ("McComb")'s Response in Opposition to
Motion for Partial Summary Judgment-Liability Coverage (Doc.
213). The Court having examined the motions, memoranda in
support, and the applicable statutory and case law, and being
fully advised in the premises, finds that the Motion for Partial
Summary Judgment-Liability Coverage should be GRANTED IN PART
AND DENIED IN PART.

1

**BACKGROUND**

This is a case arising out of an insurance dispute between Hudson Specialty Insurance Company and Talex Enterprises, LLC, Jubilee Performing Arts Center, Terrance L. Alexander and the City of McComb. The dispute arises out of an incident involving a property insured by Hudson, the JPAC Building, located at 230-232 Main Street, McComb, Mississippi. Talex owns the JPAC Building and, at the time of the incident, Jubilee operated a performing arts school out of the building. Alexander is the principal for both Talex and Jubilee. Faraway, LLC was the mortgage holder for the JPAC building.

The JPAC Building is listed under two policies of insurance issued by Hudson. Talex is the named insured under one policy (the "Talex Policy"), which provides building property coverage. Alexander d/b/a Jubilee is the named insured under the other policy (the "Alexander Policy"), which provides personal property coverage. Both policies also provide commercial general liability coverage. Hudson paid Faraway, the mortgage holder, $660,000.00 under the Business and Personal Property Coverage provision of the Talex Policy. McComb is currently seeking indemnification for the $389,320.39 it spent in response to the JPAC collapse under the commercial general liability coverage of the Talex and Alexander Policies.

On July 23, 2017, the JPAC Building collapsed. McComb declared an emergency condition and began the process of stabilizing the JPAC Building to prevent further injury and property destruction. McComb retained and paid an engineering firm to provide structural engineering services regarding the demolition and stabilization of the JPAC Building and surrounding properties so that a major downtown intersection could be opened. It paid for demolition work and for debris to be cleared away from the Subject Property and neighboring properties. In addition to these expenses, McComb also had to pay for additional hours worked by members of its Police, Fire, and Public Works Departments resulting from the collapse. Aside from expenses associated with the building itself, McComb also paid for repairs/restoration to property and equipment separate from the JPAC Building.

On August 11, 2017, McComb sued Talex in Chancery Court of Pike County to recoup expenses it had incurred in stabilizing the JPAC Building and collapse site and protecting the public and adjacent properties from the collapse. (Doc. 44-1). Hudson determined that it had no obligation to defend its insured in that lawsuit. McComb and Talex filed a joint Motion to Dismiss McComb's state lawsuit against Talex. The Circuit Court

dismissed McComb's suit without prejudice on July 10, 2018.
(Doc. 202-4)[1].

McComb, Alexander, Talex, and Jubilee entered into a
Contract of Assignment of Chose in Action ("the Assignment")
(Doc. 67-1) on December 22, 2017. McComb, Alexander, Talex, and
Jubilee agreed to proceed under joint representation provided by
Attorney Wayne Dowdy stating that the parties will "cooperate
with the other to their mutual advantage, in all matters
pertaining to the insurance policies." The Assignment stated
that: (1) McComb's claim, in the amount of $389,320.39 will be
made solely under the commercial general liability coverage of
the insurance policies issued by Hudson, and from no other
coverage, and (2) that the proximate cause of the collapse was
the weight of rain that had, unknown to Talex and Alexander,
collected on the roof.

**STANDARD OF REVIEW**

A party is entitled to summary judgment if the movant
"shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law." FED.
R. CIV. P. 56(a). The Court is not permitted to make credibility
determinations or weigh the evidence at the summary judgment
stage of litigation. See Deville v. Marcantel, 567 F.3d 156, 164

---

[1] The State Court matter was transferred from Chancery Court to Circuit Court
on November 21, 2017. [ECF 213-5].

(5th Cir. 2009)(citing <u>Turner v. Baylor Richardson Med. Ctr.</u>,
476 F.3d 337, 343 (5th Cir. 2010)). All facts and inferences
must be made in "the light most favorable to the nonmoving
party." <u>See</u> <u>Sierra Club, Inc. v. Sandy Creek Energy Assoc.,</u>
<u>L.P.</u>, 627 F.3d 134, 138 (5th Cir. 2010)(citation omitted).

**ANALYSIS**

Hudson puts forth two claims; (1) that Hudson did not owe
defense obligations for McComb's lawsuit against Talex and
Alexander, and (2) that Hudson did not/does not owe indemnity
obligations for McComb's damages. In order to determine Hudson's
duty to indemnify McComb the Court must first consider whether
Hudson wrongfully refused to defend the original state lawsuit
that McComb filed in Chancery Court in Pike County. Therefore,
Hudson's liability is premised on first, its duty to defend
against McComb, and then — if there is a duty to defend — upon
its obligations, if any, to indemnify under the Subject
Policies. This court will address Hudson's duty to defend and
then its obligation to indemnify.

## I.   Hudson Owed Defense Obligations for McComb's Lawsuit

### McComb's Operative Pleadings Alleged Non-Covered Claims

The insurer's duty to defend depends on the policy language
and the allegations of the complaint. <u>See</u> <u>Lafayette Ins. Co. v.</u>

Peerboom, 813 F.Supp.2d 823, 825 (S.D. Miss. 2011). Under this so-called "eight-corners" test, a duty to defend arises if the complaint alleges facts that are arguably within the policy's coverage. See id. However, there is no duty to defend if the complaint alleges actions that exceed the scope of the policy's coverage. See id. The duty to defend is "broader than the insurer's duty to indemnify under its policy of insurance: the insurer has a duty to defend when there is any basis for potential liability under the policy." See State Farm Mut. Auto. Ins. Co. v. LogistiCare Solutions, LLC, 751 F.3d 684, 689 (5th Cir. 2014)(emphasis added). Insurance policy provisions are "construed strongly against the drafter." See Liberty Mut. Fire Ins. Co. v. Canal Ins. Co., 177 F.3d 326, 331 (5th Cir. 1999). Insurance companies owe a duty to defend, so long as "some allegation with the underlying complaint potentially triggers coverage." See Travelers Indem. Co. v. Forrest Cty., 195 F.Supp.3d 890, 898 (S.D. Miss. 2016).

Hudson claims that the operative pleadings in McComb's lawsuit never triggered defense obligations because the pleadings alleged "non-covered omissions." Hudson asserts that it could only be obligated to defend to the extent that McComb's operative pleading sought recovery for "property damage" allegedly resulting from an "occurrence" (accidental conduct) that was neither expected nor intended by Talex or Alexander.

Hudson claims that McComb's complaint did not allege an occurrence because the property damage was expected or intended by Talex or Alexander; therefore, the policies did not provide coverage.

The definition of "occurrence" has been analyzed several times by the Mississippi Supreme Court. See EMJ Corp. v. Hudson Specialty Ins. Co., 833 F.3d 544, 548 (5th Cir. 2016). The Court has consistently held that there is one relevant consideration in determining if an injury is an occurrence. Id. There is coverage unless the "chain of events leading to the injuries complained of were set in motion and followed a course consciously devised and controlled by [the insured] without the unexpected intervention of any third person or extrinsic force." Id. Courts should be wary about conflating an intended action with an intended result. Id. An intentional action, taken without the intention of causing the complained-of injury is an occurrence and will be covered under the Policies. Id.

An act is intentional if "the actor desires to cause the consequences of his act, or believes that the consequences are substantially certain to result from it." U.S. Fidelity & Guarn. Co. v. Omnibank, 812 So.2d 196, 201 (Miss. 2002)(quoting Coleman v. Sanford, 521 So.2d 876, 878 (Miss. 1988)). However, under Mississippi law, an incident is not an "occurrence," and is not

covered by the policy if, "whether prompted by negligence or malice, (1) [the insured]'s acts were committed consciously and deliberately, without the unexpected intervention of any third force, and (2) the likely (and actual) effect of those acts was well within [the insured]'s foresight and anticipation." Acceptance Ins. Co. v. Powe Timber Co., Inc., No. 06-60216, 2007 WL 624992, *1 (5th Cir. Feb. 21, 2007)(quoting Allstate Ins. Co. v. Moulton, 464 So.2d 507, 509 (Miss. 1985)); see also, Lafayette Ins. Co. v. Peerboom, 813 F.Supp.2d 823, 826 (S.D. Miss 2011)("an insured's intentional actions do not constitute 'accidents,' and the damages resulting therefrom do not amount to 'occurrences,' even if the insured acts in a negligent manner.")(internal citations omitted). If the claim results from intentional conduct that causes foreseeable harm, it is not covered even if the damages or injury are greater than expected or intended. See Peerboom, 813 F.Supp.2d at 826(citing Omnibank, 812 So.2d at 201).

Defendants/Counter-Claimants (Talex, Alexander, Jubilee, McComb) claim that Hudson had a duty to defend because McComb alleged Alexander and Talex acted negligently, which they argue leaves open the possibility that the collapse was caused by an inadvertent act. See EMJ Corp. v. Hudson Specialty Ins. Co., 833 F.3d 544, 548-49 (5th Cir. 2016)(rejecting HSIC's attempt to avoid its defense obligations because under Mississippi law

"intentional actions taken without an intent or expectation of causing any injury <u>are occurrences</u> for insurance purposes")(emphasis added).

Defendants/Counter-Claimants (Talex, Alexander, Jubilee, McComb) rely on <u>Peerboom</u>, which held that summary judgment could not be granted to the insurer based on the policies' definition of "occurrence" since the complaint left open the possibility that the property damage was caused by an accidental, <u>i.e.</u>, inadvertent, act. However, in <u>Peerboom</u>, the insureds put forth three possible reasons for the collapse of their home. As the court explained, "Since the act which likely caused the 'property damage' is as yet undetermined, then it is likewise not known at this point whether the 'likely (and actual) effect of the act was well within [Absolute's] foresight and anticipation." <u>Id</u>. at n.5. This differs from the case at hand because McComb did not assert multiple reasons that the building could collapse. It puts forth one argument in its complaint: the building collapsed because of rainwater, the Defendants/Counter-Claimants (Talex, Alexander, Jubilee, McComb) had actual notice of the accumulation of rainwater and actual notice that the building was in threat of collapsing.

In addition, Defendants/Counter-Claimants (Talex, Alexander, Jubilee, McComb) have ignored the whole of McComb's

complaint by focusing on negligence. The pleading clearly states that Talex had <u>actual notice</u> of three facts: (1) that an unsafe amount of water was accumulating on the roof, and (2) that the roof's supportive structure was in danger, and (3) that the great weight of the water threatened to <u>cause the building to collapse</u>. <u>See</u> Underlying Compl. [ECF 44-1]. Each of its claims against Talex were premised on those three underlying facts. According to McComb's Complaint, it was within the foresight of Talex and Alexander that the collapse could happen. Because they failed to repair or warn others, the incident was "intended or expected."

There is no genuine dispute of material fact that McComb alleged a "non-covered omission." McComb's complaint clearly alleged that Talex consciously choose to not repair the roof or warn others of the potential danger and that the collapse was well within Talex's foresight as Talex had been warned that collapse was a possibility. Precedent establishes that negligent acts are not occurrences if the injury and damage is within the insured's foresight.

## Hudson's Duty to Defend was Triggered by Extrinsic Facts

Hudson next argues that the Defendants/Counter-Claimants (Talex, Alexander, Jubilee, McComb) never presented extrinsic facts to Hudson so as to trigger any defense obligations. The

general rule is that an insurer's duty to defend "hinges on the allegations in the underlying complaint." American States Ins. Co. v. Natchez Steam Laundry, 131 F.3d 551, 553 (5th Cir. 1998). However, Mississippi law provides an exception to the rule; an insurer has a duty to defend if it has knowledge, or could obtain knowledge through a reasonable investigation, of the existence of facts that trigger coverage. Id. The rule states:

> "Where complaint fails to state cause of action covered by policy, but insured informs insurer that true facts are inconsistent with complaint, or insured learns from independent investigation that the true facts, if established, present potential liability of insured, insurer must defend until it appears that facts upon which liability is predicated exclude insurance coverage."

Mavar Shrimp & Oyster Co. v.  Fidelity & Guaranty Co, 187 So.2d 871, 875 (Miss. 1966)(quoting Crum v. Anchor Casualty Co., 119 N.W.2d 703, 703 (1963)). Hudson relies on Natchez Steam Laundry for its claim that it has no duty to defend as there were no "true facts" that would trigger defense obligations. A duty to defend exists if the insured "learns of true facts, which, if established present potential liability of insured" and a cause of action based on those facts would be covered by the policy. See Acceptance Ins. Co. v. Powe Timber Co., Inc., 403 F.Supp.2d 552, 558 (S.D. Miss. 2005). The insurer must provide a defense until it appears that "the facts upon which liability is

predicated fall outside the policy's coverage." See Isom v. Valley Forge Ins. Co., 716 Fed.Appx. 280, 285 (5th Cir. 2017).

In Natchez Steam Laundry, the Fifth Circuit upheld the District Court's grant of insurer's Motion for Summary Judgment in a sexual harassment case. See 131 F.3d at 552. In that case, the insured claimed that he had provided facts that should have triggered the insurance company's duty to defend, despite any failure of the pleadings. To combat the complaint of sexual harassment against him, the insured "promptly notified American States that any touching was unintentional." Id. at 553. The Court noted, "Simmons's contention that his bawdy behavior was accidental is not a 'fact,' but only an assertion." Id. As a result, the Court held that "This argument fails for a simple reason: Natchez and Simmons have not supplied 'facts' that indicate coverage." Id. With this framework as guidance, we must look to the "facts" that Hudson possessed when determining its defense obligations and evaluate whether they were mere assertions.

Hudson's Claim File had the following information: (1)a July 23 newspaper article that claimed church services were held on the day of the collapse and students and school officials had met there earlier in the day, (2) a July 24 article that claimed Alexander and JPAC students were in the building only hours

before the collapse and that contractors had recently been on the roof to repair the air conditioner but had not reported any issues with the roof, (3) a July 30 article that noted a local roofer did not believe rain caused the collapse, and that the age of the building could have been a factor, (4) an August 13 article that provided: (i) Alexander had denied McComb's claims that he had prior knowledge of the roof being unsafe, (ii) Alexander had never been on the roof; and (iii) that workers in January had not reported any problems with the roof. See August 15, 2017 E-mail and Selected Articles, [ECF 213-3].

Alexander's claims that he had no prior knowledge of the roof being unsafe and that he had never been on the roof are "assertions," i.e., a mere denial of the allegations. However, Hudson possessed other information that rises above the mere "assertions" at issue in Natchez Steam Laundry. The fact that Hudson knew (1) that contractors had recently been on the roof and had not reported any problems to Alexander, and (2) that local contractors believed that the age of the building could have caused the collapse, not rainwater, is enough to put Hudson on notice that there may be facts that would trigger its duty to defend.

There are variations between the facts in Hudson's claim file and the allegations of the complaint. See Mavar Shrimp & Oyster

Co., 187 So.2d at 875. Should the facts be established, they would create an "occurrence" covered by the policies. Therefore, Hudson had a duty to defend until it appeared that the "true facts" fell outside of the policies' coverage. All of this information was known to Hudson when it determined it had no defense obligations. Therefore, Hudson's claim that there were no extrinsic facts to trigger defense obligations fails.

## II.  Hudson Did Not/Does Not Owe Indemnity Obligations for McComb's Lawsuit

Hudson argues that it does not owe indemnity obligations because of the Assignment, i.e. the contract that Talex, Alexander, Jubilee, and McComb entered to proceed with common interests against Hudson. Hudson argues that the Assignment released Talex and Alexander from legal liability for McComb's claimed damages, that no act or omission attributable to Talex or Alexander caused the claimed damages, and the "damage to property" exclusion separately negates coverage for those damages.

## Hudson Waived its Right to Contest The Assignment When it Wrongfully Failed to Defend Talex and Alexander

As the Fifth Circuit writes, "Unlike the duty to defend, which can be determined at the beginning of a lawsuit, an insurer's duty to indemnify generally cannot be ascertained until the completion of litigation, when liability is

established, if at all." Estate of Bradley ex rel. Sample v.
Royal Surplus Lines Ins. Co., Inc., 647 F.3d 524, 531 (5th Cir.
2011). The duty to indemnify typically can be resolved only
after the conclusion of the underlying action because the duty
to indemnify "turns on the actual facts giving rise to liability
in the underlying suit." Id. Summary judgment is not typically
the avenue to address indemnification issues.

The Subject Policies' commercial general liability coverage
forms generally allow third parties to directly "recover on an
agreed settlement or on a final judgment against an insured."
The terms of the Policies obligate Hudson to provide indemnity
for "sums that the insured becomes legally obligated to pay as
damages." See Alexander and Talex Policies [ECF 13-2, 13-3], at
p. 24. However, in this case, McComb released Talex and
Alexander from liability for McComb's claimed damages, i.e.,
created a scenario where there are no "sums that the insured
becomes legally obligated to pay." Doc. 203 at 11. Therefore,
Hudson argues that, as a result of The Assignment, no indemnity
obligations "have arisen or will arise under the Policies." Id.
at 12.

Defendants/Counter-Claimants (Talex, Alexander, Jubilee,
McComb) assert that Hudson waived its ability to contest the
"insured's personal liability" to McComb "by breaching a defense

15

obligation…." Doc. 214 at 19. Precedent establishes that "unjustifiably denying liability or breaching a duty to defend will preclude an insurer from relying on policy provisions that deny coverage." See Jones v. S. Marine & Aviation Underwriters, Inc., 888 F.2d 358, 361 (5th Cir. 1989). Hudson counters by differentiating between waiving policy conditions versus extending coverage through waiver. As Hudson asserts, it is claiming that there is no coverage at all because of The Assignment. As such, "the complete absence of underlying liability is not a waivable pre-condition to coverage — it is a dispositive deficiency in the claim for indemnity via the Assignment." Doc. 223 at 9–10.

Generally, under Mississippi law, "a stipulation that removed the personal liability of the insured for any judgment… also removed the obligation of the insurer, where the insurance policy provided coverage only if the insured was liable." Jones 888 F.2d at 361(citing Putman v. Ins. Co. of N. Am., 673 F.Supp. 171, 177 (N.D. Miss. 1897), aff'd, 845 F.2d 1020 (5th Cir. 1988)). In Jones, the insured entered into a settlement agreement – without consulting with the insurer – that removed personal liability from the insured. Under the policy, the personal liability of the insured was a condition precedent to coverage. Despite this, the Fifth Circuit held that the insurer waived its right to rely on the policy provisions when it

16

breached its defense obligation to the insurer. The fact that the insured was released from liability did not preclude the insurer's duty to indemnify after its decision not to defend.

Hudson argues that the terms of the Assignment abrogate coverage because "McComb states that no act or omission attributable to Talex or Alexander caused McComb's claimed damages." See ECF 203 at 12. Upon reading the Assignment, it is difficult to understand how Hudson came to this interpretation. The Assignment, when discussing liability, merely states that "… the roof on the insured buildings… unexpectedly collapsed, which collapse was proximately caused by the weight of rain that, unknown to Assignors, had collected on the roof of the buildings, due to unprecedented and huge amounts of rain…" ECF 67-1 at 1. None of these assertions absolve Alexander or Talex of possible responsibility for negligently failing to repair or maintain the roof. The Assignment asserts that the Assignors were unaware of the collection of rainwater, but it does not assert an absence of underlying possible liability to McComb. The Assignment merely releases Talex and Alexander from their personal or corporate liability by agreeing to limit any recoupment to coverage provided by the commercial general liability policy provisions.

Importantly, the Assignment states: "The parties hereto agree and contract that the claim of the Assignee, McComb, in the amount of $389,320.39 will be made solely under the commercial general liability coverage of the insurance policies issued by Hudson Specialty Insurance Company…." McComb reserved its claims against Talex to the extent that coverage is provided under the Subject Policies. Accordingly, there has not been a full and complete release of Talex as claimed by Hudson.

Hudson cites <u>Federal Ins. Co. v. Singing River Health System</u> for its assertion that the Court may grant summary judgment for the indemnification claim. <u>See</u> 850 F.3d 187, n.6 (5th Cir. 2017). <u>Singing River</u>, states that

> "the duty to indemnify could be resolved at the summary judgment state when 'the insurer has no duty to defend and the <u>same reasons</u> that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify."

850 F.3d at n.6(emphasis added)(citing <u>Farmers Texas County Mutual Ins. Co. v. Griffin</u>, 955, S.W.2d 81, 82, 84 (Tex. 1997)). In that situation – the duty to indemnify may be non-justiciable at the summary judgment stage. <u>See id</u>. However, that does not apply in this present case.

Here, Hudson's reasons not to defend <u>are not</u> the reasons it denies its obligations to indemnify. As previously stated, Hudson refused to defend because, under the operative pleadings,

McComb alleged that Talex and Alexander should have expected the roof to collapse. Hudson argues against indemnification because of the contractual agreement between McComb and Talex, Alexander, and Jubilie, – which, according to Hudson, states that Talex and Alexander did not commit an act or omission to cause the damage – i.e., a reason opposite than put forth when Hudson determined it had no duty to defend.

For these reasons, this Court will not grant Hudson's summary judgment motion regarding its obligation to indemnify. Hudson waived its right to contest the settlement agreement between McComb, Talex, Alexander, and Jubilee when it wrongfully refused to defend its insureds in McComb's state lawsuit. Hudson's next argument, that The Assignment waived all liability attributable to Talex, Alexander, and Jubilee similarly fails. Hudson cannot deny its duty to defend on the basis of Talex and Alexander's actions or failure to act while denying its duty to indemnify on the basis that Alexander and Talex are not responsible for the collapse due to their representations in The Assignment. Therefore, Talex and Alexander's possible underlying liability is not waived by the Assignment. Because Hudson's argument for summary judgment regarding indemnification fails, this Court must examine the Subject Policies to determine the extent of Hudson's obligations.

**The Damage to Property Exclusion Separately Negates Coverage for These Damages, but Does Not Apply to Expenses Incurred Outside of the Subject Property**

Having determined that Hudson may be required to indemnify McComb's claim for damages, the Court must examine the Subject Policies to see if any indemnification exclusions apply. McComb seeks recovery for expenses incurred in stabilizing the JPAC collapse site and protecting the public and adjacent properties. It also seeks recovery for the expenses for repairs/restoration to property (Main Street flower bed) and equipment (street light) separate from the JPAC Building.

Defendants/Counter-Claimant (Talex, Alexander, Jubilee, McComb)'s interpretation of the Subject Policies' "property damage" exclusion runs counter to the Policies' language. The property damage exclusion is within the general commercial liability coverage. The Policies define "property damage" as:

> "(a) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or (b) Loss of use of tangible property that is not physically injured. For the purpose of this insurance, electronic data is not tangible property."

<u>See</u> Alexander and Talex Policies [ECF 13-2, 13-3] at p. 28.

However, the policies include a property damage exclusion that

negates indemnity obligations for "property damage" to:

> "Property you own, rent, or occupy, including any
> costs or expenses incurred by you, or any other
> person, organization or entity, for repair,
> replacement, enhancement, restoration or maintenance
> of such property for any reason, including prevention
> of injury to a person or damage to another's
> property."

<u>See</u> 2017 Alexander and Talex Policies [ECF 13-2, 13-3], at p.

17. The Policies' plain language clearly states that Hudson does

not provide coverage for property damage for buildings that the

insureds own. This property damage exclusion is common to

liability policies. The intent of such an exclusion is to

prevent the insured from using a general liability policy as

property insurance. <u>See</u> <u>Porter v. Clarendon Nat. Ins. Co.</u>, 925

N.E.2d 58, 62 (Mass. App. Ct. 2010).

Defendants/Counter-Claimants (Talex, Alexander, Jubilee,

McComb) point to a number of state and federal cases that

support their narrow interpretation of the policies. <u>See</u>, <u>e.g.</u>,

<u>Anderson Dev. Co. v. Travelers Indem. Co.</u>, 49 F.3d 1128, 1134

(6th Cir. 1995) (concluding that the owned-property exclusion

did not bar coverage for damages caused by "a government mandate to conduct [an] environmental clean-up"); Patz v. St. Paul Fire & Marine Ins. Co., 15 F.3d 699, 705 (7th Cir. 1994) ("The fact that the clean up occurred on [the insured's] land is irrelevant"). Defendants/Counter-Claimants (Talex, Alexander, Jubilee, McComb) also erroneously rely on Allstate Ins. Co. v. Dana Corp., 759 N.E.2d 1049 (Ind. 2001) which found that the owned property exclusion did not apply to liability for environmental clean-up costs because there were ambiguities among the subject policies and "where there is ambiguity, insurance policies are to be construed strictly against the insurer."

None of those cases involve policies with a similarly broadened property damage exclusion at issue. Here, the owned-property exclusion is broader because it excludes "repair, replacement, enhancement, restoration or maintenance of such property for any reason." See Taos Ski Valley, Inc. v. Nova Casualty Co., 705 Fed.Appx. 749, 754 (10th Cir. 2017)(emphasis added). In this case, the policies clearly exclude repairs and

restoration of owned property. Therefore, to be covered, the

liability does not apply to property that the insured party

owns, rents, or occupies.

Defendants/Counter-Claimants (Talex, Alexander, Jubilee,

McComb) argue that McComb's expenses "cannot be construed as

efforts to repair, replace, enhance, restore, or maintain the

Subject Property," because the JPAC Building was "partially

demolished at the direction of professionals retained by

McComb." However, Defendants/Counter-Claimants (Talex,

Alexander, Jubilee, McComb) ignore a significant portion of the

Subject Policies that state, "for any reason, including

prevention of injury to a person or damage to another's

property." McComb's efforts and ensuing expenses were to prevent

injury to the citizens of McComb and any damage to adjoining or

neighboring properties. As such, its actions and expenses

incurred fall well within the broad gamut of the "property

damage" exclusion.

While all expenses regarding the JPAC building are excluded

under the subject policies, the expenses to repair the flower

beds on Main Street and the street lights are not excluded.

Those expenses did not result from damage to the property

"owned, rented, or occupied" by Alexander or Talex. Therefore,

the owned property exclusion does not apply and Hudson must

indemnify for damages to the flower beds and for repairs to the

street lights.

## CONCLUSION

Hudson had a duty to defend Defendants/Counter-Claimants

(Talex, Alexander, Jubilee, McComb) in the suit brought by

McComb. While McComb's operative pleadings did not allege

covered conduct, there was sufficient extrinsic information to

put Hudson on notice that it may have a duty to defend.

For the issue of indemnification, the Subject Policies'

exclusion for property damage of owned, rented, or occupied

property applies. Therefore, Hudson has no duty to indemnify

McComb for its expenses as a result of the JPAC collapse. The

property exclusion does not apply the flower beds and street

lights, which are not owned by Alexander, Talex, or Jubilee.

Accordingly, the Court GRANTS IN PART and DENIES IN PART

the Plaintiff/Counter-Defendant's Motion for Partial Summary

Judgment.

SO ORDERED this the 26th day of September, 2019.

_____/s/ David Bramlett_____
UNITED STATES DISTRICT JUDGE