IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

Western Division


HUDSON SPECIALTY INSURANCE COMPANY                    PLAINTIFF/

COUNTER-DEFENDANT


V.                                    CIV NO: 5:17-cv-00137-DCB-MTP


TALEX ENTERPRISES, LLC; JUBILEE PERFORMING

ARTS CENTER, INC.; TERRANCE L. ALEXANDER; and the

BOARD OF MAYOR AND SELECTMEN                        DEFENDANTS/

OF MCCOMB, MISSISSIPPI, et al.                    COUNTER-CLAIMANTS

<u>ORDER</u>

THIS MATTER is before the Court on Plaintiff/Counter-
Defendant Hudson Specialty Insurance Company ("Hudson")'s Motion
for Partial Summary Judgment-Liability Coverage (Doc. 202), and
Defendants/Counter-Claimants Talex Enterprises, LLC ("Talex");
Terrance L. Alexander ("Alexander"); Jubilee Performing Arts
Center, Inc. ("Jubilee"); and, the Board of Mayor and Selectmen
of McComb, Mississippi ("McComb")'s Response in Opposition to
Motion for Partial Summary Judgment-Liability Coverage (Doc.
213). The Court having examined the motions, memoranda in
support, and the applicable statutory and case law, and being
fully advised in the premises, finds that the Motion for Partial
Summary Judgment-Liability Coverage should be GRANTED IN PART
AND DENIED IN PART.

**BACKGROUND**

This is a case arising out of an insurance dispute between Hudson Specialty Insurance Company and Talex Enterprises, LLC, Jubilee Performing Arts Center, Terrance L. Alexander and the City of McComb. The dispute arises out of an incident involving a property insured by Hudson, the JPAC Building, located at 230-232 Main Street, McComb, Mississippi. Talex owns the JPAC Building and, at the time of the incident, Jubilee operated a performing arts school out of the building. Alexander is the principal for both Talex and Jubilee. Faraway, LLC was the mortgage holder for the JPAC building.

The JPAC Building is listed under two policies of insurance issued by Hudson. Talex is the named insured under one policy (the "Talex Policy"), which provides building property coverage. Alexander d/b/a Jubilee is the named insured under the other policy (the "Alexander Policy"), which provides personal property coverage. Both policies also provide commercial general liability coverage. Hudson paid Faraway, the mortgage holder, $660,000.00 under the Business and Personal Property Coverage provision of the Talex Policy. McComb is currently seeking indemnification for the $389,320.39 it spent in response to the JPAC collapse under the commercial general liability coverage of the Talex and Alexander Policies.

On July 23, 2017, the JPAC Building collapsed. McComb declared an emergency condition and began the process of stabilizing the JPAC Building to prevent further injury and property destruction. McComb retained and paid an engineering firm to provide structural engineering services regarding the demolition and stabilization of the JPAC Building and surrounding properties so that a major downtown intersection could be opened. It paid for demolition work and for debris to be cleared away from the Subject Property and neighboring properties. In addition to these expenses, McComb also had to pay for additional hours worked by members of its Police, Fire, and Public Works Departments resulting from the collapse. Aside from expenses associated with the building itself, McComb also paid for repairs/restoration to property and equipment separate from the JPAC Building.

On August 11, 2017, McComb sued Talex in Chancery Court of Pike County to recoup expenses it had incurred in stabilizing the JPAC Building and collapse site and protecting the public and adjacent properties from the collapse. (Doc. 44-1). Hudson determined that it had no obligation to defend its insured in that lawsuit. McComb and Talex filed a joint Motion to Dismiss McComb's state lawsuit against Talex. The suit was transferred from Chancery Court to Circuit Court on November 21, 2017 [ECF

No. 213-5], and the Circuit Court dismissed McComb's suit without prejudice on July 10, 2018. [ECF No. 202-4].

McComb, Alexander, Talex, and Jubilee entered into a Contract of Assignment of Chose in Action ("the Assignment") (Doc. 67-1) on December 22, 2017. McComb, Alexander, Talex, and Jubilee agreed to proceed under joint representation provided by Attorney Wayne Dowdy stating that the parties will "cooperate with the other to their mutual advantage, in all matters pertaining to the insurance policies." The Assignment stated that: (1) McComb's claim, in the amount of $389,320.39 will be made solely under the commercial general liability coverage of the insurance policies issued by Hudson, and from no other coverage, and (2) that the proximate cause of the collapse was the weight of rain that had, unknown to Talex and Alexander, collected on the roof.

## STANDARD OF REVIEW

A party is entitled to summary judgment if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Court is not permitted to make credibility determinations or weigh the evidence at the summary judgment stage of litigation. See Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir. 2009)(citing Turner v. Baylor Richardson Med. Ctr.,

476 F.3d 337, 343 (5th Cir. 2010)). All facts and inferences must be made in "the light most favorable to the nonmoving party." See Sierra Club, Inc. v. Sandy Creek Energy Assoc., L.P., 627 F.3d 134, 138 (5th Cir. 2010)(citation omitted).

**ANALYSIS**

Hudson puts forth two claims; (1) that Hudson did not owe defense obligations for McComb's lawsuit against Talex and Alexander which was filed in the Chancery Court of Pike County, then transferred to the Circuit Court, and (2) that Hudson did not/does not owe indemnity obligations for McComb's damages. In order to determine Hudson's duty to indemnify McComb the Court must first consider whether Hudson wrongfully refused to defend the original state lawsuit that McComb filed in Chancery Court in Pike County. Therefore, Hudson's liability is premised on first, its duty to defend against McComb, and then — if there is a duty to defend — upon its obligations, if any, to indemnify under the Subject Policies. This court will address Hudson's duty to defend and then its obligation to indemnify. Hudson claims that the subject Policies should be rescinded and are void ab initio because of material misrepresentations on the part of Alexander. However, that issue is not currently before the Court.

**There is a Genuine Issue of Material Fact As to Whether Hudson Owed Defense Obligations for McComb's Lawsuit**

**McComb's Operative Pleadings Alleged Non-Covered Claims**

The insurer's duty to defend depends on the policy language and the allegations of the complaint. _See_ _Lafayette Ins. Co. v. Peerboom_, 813 F.Supp.2d 823, 825 (S.D. Miss. 2011). Under this so-called "eight-corners" test, a duty to defend arises if the complaint alleges facts that are arguably within the policy's coverage. _See_ _id_. However, there is no duty to defend if the complaint alleges actions that exceed the scope of the policy's coverage. _See_ _id_. The duty to defend is "broader than the insurer's duty to indemnify under its policy of insurance: the insurer has a duty to defend when there is any basis for potential liability under the policy." _See_ _State Farm Mut. Auto. Ins. Co. v. LogistiCare Solutions, LLC_, 751 F.3d 684, 689 (5th Cir. 2014)(emphasis added). Insurance policy provisions are "construed strongly against the drafter." _See_ _Liberty Mut. Fire Ins. Co. v. Canal Ins. Co._, 177 F.3d 326, 331 (5th Cir. 1999). Insurance companies owe a duty to defend, so long as "some allegation with the underlying complaint potentially triggers coverage." _See_ _Travelers Indem. Co. v. Forrest Cty._, 195 F.Supp.3d 890, 898 (S.D. Miss. 2016).

Hudson claims that the operative pleadings in McComb's lawsuit never triggered defense obligations because the

pleadings alleged "non-covered omissions." Hudson asserts that it could only be obligated to defend to the extent that McComb's operative pleading sought recovery for "property damage" allegedly resulting from an "occurrence" (accidental conduct) that was neither expected nor intended by Talex or Alexander. Hudson claims that McComb's complaint did not allege an occurrence because the property damage <u>was</u> expected or intended by Talex or Alexander; therefore, the policies did not provide coverage.

The definition of "occurrence" has been analyzed several times by the Mississippi Supreme Court. <u>See</u> <u>EMJ Corp. v. Hudson Specialty Ins. Co.</u>, 833 F.3d 544, 548 (5th Cir. 2016). The Court has consistently held that there is one relevant consideration in determining if an injury is an occurrence. <u>Id</u>. There is coverage unless the "chain of events leading to the injuries complained of were set in motion and followed a course consciously devised and controlled by [the insured] without the unexpected intervention of any third person or extrinsic force." <u>Id</u>. Courts should be wary about conflating an intended action with an intended result. <u>Id</u>. An intentional action, taken without the intention of causing the complained-of injury is an occurrence and will be covered under the Policies. <u>Id</u>.

An act is intentional if "the actor desires to cause the consequences of his act, or believes that the consequences are substantially certain to result from it." U.S. Fidelity & Guarn. Co. v. Omnibank, 812 So.2d 196, 201 (Miss. 2002)(quoting Coleman v. Sanford, 521 So.2d 876, 878 (Miss. 1988)). However, under Mississippi law, an incident is not an "occurrence," and is not covered by the policy if, "whether prompted by negligence or malice, (1) [the insured]'s acts were committed consciously and deliberately, without the unexpected intervention of any third force, and (2) the likely (and actual) effect of those acts was well within [the insured]'s foresight and anticipation." Acceptance Ins. Co. v. Powe Timber Co., Inc., No. 06-60216, 2007 WL 624992, *1 (5th Cir. Feb. 21, 2007)(quoting Allstate Ins. Co. v. Moulton, 464 So.2d 507, 509 (Miss. 1985)); see also, Lafayette Ins. Co. v. Peerboom, 813 F.Supp.2d 823, 826 (S.D. Miss 2011)("an insured's intentional actions do not constitute 'accidents,' and the damages resulting therefrom do not amount to 'occurrences,' even if the insured acts in a negligent manner.")(internal citations omitted). If the claim results from intentional conduct that causes foreseeable harm, it is not covered even if the damages or injury are greater than expected or intended. See Peerboom, 813 F.Supp.2d at 826(citing Omnibank, 812 So.2d at 201).

Defendants/Counter-Claimants (Talex, Alexander, Jubilee, McComb) claim that Hudson had a duty to defend because McComb alleged Alexander and Talex acted negligently, which they argue leaves open the possibility that the collapse was caused by an inadvertent act. See EMJ Corp. v. Hudson Specialty Ins. Co., 833 F.3d 544, 548–49 (5th Cir. 2016)(rejecting HSIC's attempt to avoid its defense obligations because under Mississippi law "intentional actions taken without an intent or expectation of causing any injury are occurrences for insurance purposes")(emphasis added).

Defendants/Counter-Claimants (Talex, Alexander, Jubilee, McComb) rely on Peerboom, which held that summary judgment could not be granted to the insurer based on the policies' definition of "occurrence" since the complaint left open the possibility that the property damage was caused by an accidental, i.e., inadvertent, act. However, in Peerboom, the insureds put forth three possible reasons for the collapse of their home. As the court explained, "Since the act which likely caused the 'property damage' is as yet undetermined, then it is likewise not known at this point whether the 'likely (and actual) effect of the act was well within [Absolute's] foresight and anticipation." Id. at n.5. This differs from the case at hand because McComb did not assert multiple reasons that the building could collapse. It puts forth one argument in its complaint: the

building collapsed because of rainwater, the Defendants/Counter-Claimants (Talex, Alexander, Jubilee, McComb) had actual notice of the accumulation of rainwater and actual notice that the building was in threat of collapsing.

In addition, Defendants/Counter-Claimants (Talex, Alexander, Jubilee, McComb) have ignored the whole of McComb's complaint by focusing on negligence. The pleading clearly states that Talex had <u>actual notice</u> of three facts: (1) that an unsafe amount of water was accumulating on the roof, and (2) that the roof's supportive structure was in danger, and (3) that the great weight of the water threatened to <u>cause the building to collapse</u>. <u>See</u> Underlying Compl. [ECF No. 44-1]. Each of its claims against Talex were premised on those three underlying facts. According to McComb's Complaint, it was within the foresight of Talex and Alexander that the collapse could happen. Because they failed to repair or warn others, the incident was "intended or expected."

There is no genuine dispute of material fact that McComb alleged a "non-covered omission." McComb's complaint clearly asserted that Talex consciously choose to not repair the roof or warn others of the potential danger and that the collapse was well within Talex's foresight as Talex had been warned that collapse was a possibility. Precedent establishes that negligent

acts are not occurrences if the injury and damage is within the insured's foresight.

**There Is a Genuine Issue of Material Fact as to Whether Hudson's Duty to Defend was Triggered by Extrinsic Facts**

Hudson next argues that the Defendants/Counter-Claimants (Talex, Alexander, Jubilee, McComb) never presented extrinsic facts to Hudson so as to trigger any defense obligations in the lawsuit filed in State Court. The general rule is that an insurer's duty to defend "hinges on the allegations in the underlying complaint." American States Ins. Co. v. Natchez Steam Laundry, 131 F.3d 551, 553 (5th Cir. 1998). However, Mississippi law provides an exception to the rule; an insurer has a duty to defend if it has knowledge, or could obtain knowledge through a reasonable investigation, of the existence of facts that trigger coverage. Id. The rule states:

> "Where complaint fails to state cause of action covered by policy, but insured informs insurer that true facts are inconsistent with complaint, or insured learns from independent investigation that the true facts, if established, present potential liability of insured, insurer must defend until it appears that facts upon which liability is predicated exclude insurance coverage."

Mavar Shrimp & Oyster Co. v. Fidelity & Guaranty Co, 187 So.2d 871, 875 (Miss. 1966)(quoting Crum v. Anchor Casualty Co., 119 N.W.2d 703, 703 (1963)). Hudson relies on Natchez Steam Laundry for its claim that it has no duty to defend as there were no

"true facts" that would trigger defense obligations. A duty to defend exists if the insured "learns of true facts, which, if established present potential liability of insured" and a cause of action based on those facts would be covered by the policy. See Acceptance Ins. Co. v. Powe Timber Co., Inc., 403 F.Supp.2d 552, 558 (S.D. Miss. 2005). The insurer must provide a defense until it appears that "the facts upon which liability is predicated fall outside the policy's coverage." See Isom v. Valley Forge Ins. Co., 716 Fed.Appx. 280, 285 (5th Cir. 2017).

In Natchez Steam Laundry, the Fifth Circuit upheld the District Court's grant of insurer's Motion for Summary Judgment in a sexual harassment case. See 131 F.3d at 552. In that case, the insured claimed that he had provided facts that should have triggered the insurance company's duty to defend, despite any failure of the pleadings. To combat the complaint of sexual harassment against him, the insured "promptly notified American States that any touching was unintentional." Id. at 553. The Court noted, "Simmons's contention that his bawdy behavior was accidental is not a 'fact,' but only an assertion." Id. As a result, the Court held that "This argument fails for a simple reason: Natchez and Simmons have not supplied 'facts' that indicate coverage." Id. With this framework as guidance, we must look to the information that Hudson possessed when determining

12

its defense obligations and determine if it consisted of mere assertions or facts.

Hudson's Claim File had the following information: (1) a July 23 newspaper article that claimed church services were held on the day of the collapse and students and school officials had met there earlier in the day, (2) a July 24 article that claimed Alexander and JPAC students were in the building only hours before the collapse and that contractors had recently been on the roof to repair the air conditioner but had not reported any issues with the roof, (3) a July 30 article that noted a local roofer did not believe rain caused the collapse, and that the age of the building could have been a factor, (4) an August 13 article that provided: (i) Alexander had denied McComb's claims that he had prior knowledge of the roof being unsafe, (ii) Alexander had never been on the roof; and (iii) that workers in January had not reported any problems with the roof. See August 15, 2017 E-mail and Selected Articles, [ECF No. 213-3]. It should be noted that these articles are not intended to represent the truth of the matters asserted but are merely intended as evidence of notice that Hudson had in its possession.

Alexander's claims that he had no prior knowledge of the roof being unsafe and that he had never been on the roof are

"assertions," i.e., a mere denial of the allegations. However, Hudson possessed other information that rises above the mere "assertions" at issue in Natchez Steam Laundry. The fact that Hudson possessed information that stated: (1) contractors had recently been on the roof and had not reported any problems to Alexander, and (2) that local contractors believed that the age of the building could have caused the collapse, not rainwater, is enough to put Hudson on notice that there may be facts that would trigger its duty to defend.

There are variations between the information in Hudson's claim file and the allegations of the complaint. See Mavar Shrimp & Oyster Co., 187 So.2d at 875. Should the relevant facts be established from the information in the case file, they would create an "occurrence" covered by the policies. There is a genuine issue of material fact as to whether the statements in the newspaper articles were accurate and constitute "true facts" and/or notice to trigger Hudson's duty to defend. Therefore, there is a genuine issue of material fact as to whether Hudson had a duty to defend. This information was known to Hudson when it determined it had no defense obligations. As a result, the Court holds that there is a genuine issue of material fact as to whether the "true facts" exception applies in this case. As the Mississippi Supreme Court wrote, "It would be the better part of valor to defend doubtful cases of coverage and to resolve the

doubts when the battle with the claimant is over." <u>Travelers</u>
<u>Ins. Co. v. General Refrigeration & Appliance Co.</u>, 218 So.2d
724, 727 (Miss. 1969). Therefore, for the purpose of summary
judgment, the Court finds it inappropriate at this juncture of
the proceeding to declare that Hudson had no duty to defend.

## I. Hudson Did Not/Does Not Owe Indemnity Obligations for McComb's Lawsuit

Hudson argues that it does not owe indemnity obligations
because of the Assignment, <u>i.e.</u> the contract that Talex,
Alexander, Jubilee, and McComb entered in order to proceed with
common interests against Hudson. Hudson argues that the
Assignment released Talex and Alexander from legal liability for
McComb's claimed damages, that no act or omission attributable
to Talex or Alexander caused the claimed damages, and the
"damage to property" exclusion separately negates coverage for
those damages.

## Hudson May Have Waived its Right to Contest The Assignment if it Wrongfully Failed to Defend Talex and Alexander

As the Fifth Circuit writes, "Unlike the duty to defend,
which can be determined at the beginning of a lawsuit, an
insurer's duty to indemnify generally cannot be ascertained
until the completion of litigation, when liability is
established, if at all." <u>Estate of Bradley ex rel. Sample v.</u>
<u>Royal Surplus Lines Ins. Co., Inc.</u>, 647 F.3d 524, 531 (5th Cir.

2011). The duty to indemnify typically can be resolved only after the conclusion of the underlying action because the duty to indemnify "turns on the actual facts giving rise to liability in the underlying suit." Id. Summary judgment is not typically the avenue to address indemnification issues.

The Subject Policies' commercial general liability coverage forms generally allow third parties to directly "recover on an agreed settlement or on a final judgment against an insured." The terms of the Policies obligate Hudson to provide indemnity for "sums that the insured becomes legally obligated to pay as damages." See Alexander and Talex Policies [ECF No. 13-2, 13-3], at p. 24. However, in this case, McComb released Talex and Alexander from liability for McComb's claimed damages, i.e., created a scenario where there are no "sums that the insured becomes legally obligated to pay." [ECF No. 203] at 11. Therefore, Hudson argues that, as a result of The Assignment, no indemnity obligations "have arisen or will arise under the Policies." Id. at 12.

Defendants/Counter-Claimants (Talex, Alexander, Jubilee, McComb) assert that Hudson waived its ability to contest the "insured's personal liability" to McComb "by breaching a defense obligation…." [ECF No. 214] at 19. Precedent establishes that "unjustifiably denying liability or breaching a duty to defend

16

will preclude an insurer from relying on policy provisions that deny coverage." See Jones v. S. Marine & Aviation Underwriters, Inc., 888 F.2d 358, 361 (5th Cir. 1989). Hudson counters by differentiating between waiving policy conditions versus extending coverage through waiver. As Hudson asserts, it is claiming that there is no coverage at all because of The Assignment. As such, "the complete absence of underlying liability is not a waivable pre-condition to coverage — it is a dispositive deficiency in the claim for indemnity via the Assignment." [ECF No. 223] at 9–10.

Generally, under Mississippi law, "a stipulation that removed the personal liability of the insured for any judgment… also removed the obligation of the insurer, where the insurance policy provided coverage only if the insured was liable." Jones 888 F.2d at 361(citing Putman v. Ins. Co. of N. Am., 673 F.Supp. 171, 177 (N.D. Miss. 1897), aff'd, 845 F.2d 1020 (5th Cir. 1988)). In Jones, the insured entered into a settlement agreement – without consulting with the insurer – that removed personal liability from the insured. Under the policy, the personal liability of the insured was a condition precedent to coverage. Despite this, the Fifth Circuit held that the insurer waived its right to rely on the policy provisions when it breached its defense obligation to the insurer. The fact that the insured was released from liability did not preclude the

insurer's duty to indemnify if it is found that Hudson wrongfully chose not to defend the state lawsuit.

Hudson argues that the terms of the Assignment abrogate coverage because "McComb states that no act or omission attributable to Talex or Alexander caused McComb's claimed damages." See [ECF No. 203] at 12. Upon reading the Assignment, it is difficult to understand Hudson's reasoning. The Assignment, when discussing liability, merely states that "… the roof on the insured buildings… unexpectedly collapsed, which collapse was proximately caused by the weight of rain that, unknown to Assignors, had collected on the roof of the buildings, due to unprecedented and huge amounts of rain…" [ECF No. 67-1] at 1. None of these assertions absolve Alexander or Talex of possible responsibility for negligently failing to repair or maintain the roof. The Assignment asserts that the Assignors were unaware of the collection of rainwater, but it does not assert an absence of underlying possible liability to McComb. The Assignment merely releases Talex and Alexander from their personal or corporate liability by agreeing to limit any recoupment to coverage provided by the commercial general liability policy provisions.

Importantly, the Assignment states: "The parties hereto agree and contract that the claim of the Assignee, McComb, in

the amount of $389,320.39 will be made solely under the

commercial general liability coverage of the insurance policies

issued by Hudson Specialty Insurance Company…." McComb reserved

its claims against Talex to the extent that coverage is provided

under the Subject Policies. Accordingly, there has not been a

full and complete release of Talex as claimed by Hudson.

Hudson also raises the issue of McComb's supplemental

responses to Hudson's interrogatories. Interrogatory number

sixteen asked McComb to:

> "identify every action or omission attributable to
> Talex Enterprises, LLC, Terrance Alexander, and/or
> Jubilee Performing Arts Center, Inc. which caused or
> contributed to the damages that the Board of Mayor and
> Selectmen of McComb, Mississippi claimed in Cause No.
> 17-090-PCS (previously pending in the Circuit Court of
> Pike County, Mississippi)" [ECF No. 200-9] at p. 12.

McComb answered the interrogatory saying:

> "[t]here are no acts or omissions attributable to
> Terrance Alexander and/or Jubilee Performing Arts
> Center, Inc. which caused or contributed to the
> damages claimed in the referenced State Court case.
> The answering Plaintiffs would show that they had and
> reported to the Plaintiff a claim for small amounts of
> water leakage. The funds received after adjustment of
> the claim by Cunningham Lindsey Adjusters (Mickey
> Carney) were utilized in full to make required
> improvements." Id.

This interrogatory was conducted well after McComb, Alexander,

Jubilee, and Talex entered into the Assignment, i.e., settlement

agreement. Interrogatory responses are not binding judicial

admissions, but they may be used as evidence for assessing

summary judgment. See Bradley v. Allstate Ins. Co., 620 F.3d 509, n.21 (5th Cir. 2010). "[I]f the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law," then summary judgment is appropriate. See id. at n.21. In this case, McComb's interrogatory response does not foreclose a factual inquiry as to the issue of Hudson's indemnification obligations. Hudson argues that it had no duty to defend the underlying lawsuit because there is no occurrence under the policy inasmuch as Alexander and Talex expected or reasonably anticipated the possible collapse of the building, but then when discussing indemnification, argues that there is no act or omission attributable to Alexander and Talex which caused or contributed to the damages.

Hudson cites Federal Ins. Co. v. Singing River Health System for its assertion that the Court may grant summary judgment for the indemnification claim. See 850 F.3d 187, n.6 (5th Cir. 2017). Singing River, states that

> "the duty to indemnify could be resolved at the summary judgment state when 'the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify."

850 F.3d at n.6(emphasis added)(citing <u>Farmers Texas County</u>

<u>Mutual Ins. Co. v. Griffin</u>, 955, S.W.2d 81, 82, 84 (Tex. 1997)).

In that situation — the duty to indemnify may be non-justiciable

at the summary judgment stage. <u>See id</u>. However, that does not

apply in this present case.

Here, Hudson's reasons not to defend <u>are not</u> the reasons it

denies its obligations to indemnify. As previously stated,

Hudson refused to defend because, under the operative pleadings,

McComb alleged that Talex and Alexander should have anticipated

the roof to collapse. Hudson argues against indemnification

because of the supplemental interrogatories and contractual

agreement between McComb and Talex, Alexander, and Jubilie, -

which, according to Hudson, state that Talex and Alexander did

not commit an act or omission to cause the damage — <u>i.e.</u>, a

reason contrary to that put forth when Hudson determined it had

no duty to defend.

For these reasons, this Court denies Hudson's summary

judgment motion regarding its obligation to indemnify. There is

a genuine issue of material fact as to whether Hudson waived its

right to contest the settlement agreement between McComb, Talex,

Alexander, and Jubilee if it wrongfully refused to defend its

insureds in McComb's state lawsuit. Hudson's next argument, that

The Assignment waived all liability attributable to Talex,

Alexander, and Jubilee similarly fails. Hudson cannot deny its duty to defend on the basis of Talex and Alexander's actions or failure to act while denying its duty to indemnify on the basis that Alexander and Talex are not responsible for the collapse due to their representations in The Assignment and/or the interrogatories. Therefore, Talex and Alexander's possible underlying liability is not waived by the Assignment. Because Hudson's argument for summary judgment regarding indemnification fails, this Court will next examine the Subject Policies to determine the extent of Hudson's possible obligations.

**The Damage to Property Exclusion Separately Negates Coverage for These Damages, but Does Not Apply to Expenses Incurred Outside of the Subject Property**

Having determined that Hudson may be required to indemnify McComb's claim for damages, the Court must examine the Subject Policies to see if any indemnification exclusions apply. McComb seeks recovery for expenses incurred in stabilizing the JPAC collapse site and protecting the public and adjacent properties. It also seeks recovery for the expenses for repairs/restoration to property (Main Street flower bed) and equipment (street light) separate from the JPAC Building.

Defendants/Counter-Claimant (Talex, Alexander, Jubilee, McComb)'s interpretation of the Subject Policies' "property damage" exclusion runs counter to the Policies' language. The property damage exclusion is within the general commercial liability coverage. The Policies define "property damage" as:

> "(a) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or (b) Loss of use of tangible property that is not physically injured. For the purpose of this insurance, electronic data is not tangible property."

See Alexander and Talex Policies [ECF No. 13-2, 13-3] at p. 28.

However, the policies include a property damage exclusion that negates indemnity obligations for "property damage" to:

> "Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property."

See 2017 Alexander and Talex Policies [ECF No. 13-2, 13-3], at p. 17. The Policies' plain language clearly states that Hudson does not provide coverage for property damage for buildings that the insureds own. This property damage exclusion is common to liability policies. The intent of such an exclusion is to prevent the insured from using a general liability policy as

property insurance. See Porter v. Clarendon Nat. Ins. Co., 925 N.E.2d 58, 62 (Mass. App. Ct. 2010).

Defendants/Counter-Claimants (Talex, Alexander, Jubilee, McComb) point to a number of state and federal cases that support their narrow interpretation of the policies. See, e.g., Anderson Dev. Co. v. Travelers Indem. Co., 49 F.3d 1128, 1134 (6th Cir. 1995) (concluding that the owned-property exclusion did not bar coverage for damages caused by "a government mandate to conduct [an] environmental clean-up"); Patz v. St. Paul Fire & Marine Ins. Co., 15 F.3d 699, 705 (7th Cir. 1994) ("The fact that the clean up occurred on [the insured's] land is irrelevant"). Defendants/Counter-Claimants (Talex, Alexander, Jubilee, McComb) also erroneously rely on Allstate Ins. Co. v. Dana Corp., 759 N.E.2d 1049 (Ind. 2001) which found that the owned property exclusion did not apply to liability for environmental clean-up costs because there were ambiguities among the subject policies and "where there is ambiguity, insurance policies are to be construed strictly against the insurer."

None of those cases involve policies with a similarly broadened property damage exclusion at issue. Here, the owned-property exclusion is broader because it excludes "repair, replacement, enhancement, restoration or maintenance of such property for <u>any reason</u>." <u>See</u> <u>Taos Ski Valley, Inc. v. Nova Casualty Co.</u>, 705 Fed.Appx. 749, 754 (10th Cir. 2017)(emphasis added). In this case, the policies clearly exclude repairs and restoration of owned property. Therefore, to be covered, the liability does not apply to property that the insured party owns, rents, or occupies.

Defendants/Counter-Claimants (Talex, Alexander, Jubilee, McComb) argue that McComb's expenses "cannot be construed as efforts to repair, replace, enhance, restore, or maintain the Subject Property," because the JPAC Building was "partially demolished at the direction of professionals retained by McComb." However, Defendants/Counter-Claimants (Talex, Alexander, Jubilee, McComb) ignore a significant portion of the Subject Policies that state, "for any reason, including <u>prevention of injury</u> to a person or <u>damage to another's</u>

property." McComb's efforts and ensuing expenses were to prevent injury to the citizens of McComb and any damage to adjoining or neighboring properties. As such, its actions and expenses incurred fall well within the broad gamut of the "property damage" exclusion.

While all expenses regarding the JPAC building are excluded under the subject policies, the expenses to repair the flower beds on Main Street and the street lights are not excluded. Those expenses did not result from damage to the property "owned, rented, or occupied" by Alexander or Talex. Therefore, the owned property exclusion does not apply and then it becomes a fact issue as to whether Hudson must indemnify for damages to the flower beds and for repairs to the street lights.

## CONCLUSION

There is a genuine issue of material fact as to whether Hudson had a duty to defend Defendants/Counter-Claimants (Talex, Alexander, Jubilee, McComb) in the suit brought by McComb. While McComb's operative pleadings did not allege covered conduct,

there may have been sufficient extrinsic information to put Hudson on notice that it had a duty to defend. As there are genuine issues of material fact, Hudson's Motion for Summary Judgment is denied. Additionally, the issue of whether the subject Policies are void <u>ab initio</u> has not been addressed.

As to the issue of indemnification – should the Court find that Hudson had a duty to defend — the Subject Policies' exclusion for property damage of owned, rented, or occupied property applies. Therefore, if Hudson had a duty to defend, it would not have a duty to indemnify McComb for its expenses as a result of the JPAC collapse. The property exclusion does not apply to the flower beds and street lights, which are not owned by Alexander, Talex, or Jubilee.

Accordingly, the Court GRANTS IN PART and DENIES IN PART the Plaintiff/Counter-Defendant's Motion for Partial Summary Judgment.

SO ORDERED this the 30th day of January, 2020.

__/s/ David Bramlette_____
UNITED STATES DISTRICT JUDGE